UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20577-CIV-SEITZ/SIMONTON

ARCH INSURANCE CO. *et al.*,

    Plaintiffs,

v.

NCL (BAHAMAS), LTD.,

    Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS COUNTS II, III & IV

THIS MATTER came before the Court on Defendant's Motion to Dismiss Counts II, III and IV of Plaintiffs' Complaint [DE 11], Plaintiffs' Response [DE 14], Defendant's Reply [DE 16], and Plaintiffs' Request for Oral Argument on Defendant's Motion to Dismiss [DE 15]. The indemnity insurers for a defendant found liable in a seaman's personal injury action seek contribution from an alleged joint tortfeasor that settled with the injured seaman prior to trial. The indemnity insurers complain that the state trial judge failed to apportion fault against the settling joint tortfeasor such that their insured was liable for more than its proportional share of damages, which they claim entitles them to a new trial. Rather than appeal that decision, the indemnity insurers entered into a post-trial settlement with the injured seaman and brought this action for contribution from the joint tortfeasor that settled before trial. In these circumstances, the indemnity insurers are not entitled to contribution. As set forth more fully below, the Court will grant the motion to dismiss. Additionally, the Court will deny the request for oral argument.

I.     **BACKGROUND**

Steiner Trans-Ocean, Ltd. ("Steiner") operates the spa aboard NCL's cruise ship the "Norwegian Crown" pursuant to a Concession Agreement. [DE 1 ("Compl.") ¶ 8]. Under the

Concession Agreement, Steiner was responsible for maintaining the floor of the spa in a safe condition and NCL was required to sweep and polish the floor. [DE 16-1 ("Concession Agreement") ¶ 1(D)]. On or about February 22, 2006, Danny Simpson ("Simpson"), an employee of Steiner, slipped and fell on a wet floor in the spa area. [Compl. ¶¶ 9-11]. Simpson allegedly sustained significant injuries as a result of his fall. On September 26, 2007, Simpson sued NCL and Steiner in Florida state court, Case No. 07-31265-CA-32, alleging causes of action under the Jones Act, 46 U.S.C. § 30104, and general maritime law for negligence, unseaworthiness, and maintenance and cure. [*Id.* ¶ 12].

On September 10, 2009, Simpson settled all of his claims against NCL for $400,000.00. [Compl. ¶ 14]. Prior to settling with NCL, on June 24, 2009, Simpson settled his maintenance and cure claim with Steiner. [*Id.* ¶ 15]. Steiner did not settle Simpson's Jones Act and general maritime law negligence claims and the case went to trial on Simpson's remaining negligence claims against Steiner. [*See id.* ¶ 17]. The jury found Steiner negligent and awarded Simpson $9,254,232.00 in damages. [*Id.* ¶ 19]. Plaintiffs complain that the jury did not apportion liability according to relative fault such that the entire judgment was entered against Steiner. [*See id.* ¶¶ 18-19]. While post-trial motions were pending – Steiner filed a motion for a directed verdict and a motion for a new trial – Simpson, Steiner, and Steiner's excess liability insurers participated in a mediation, and on April 18, 2010, Simpson settled his negligence claim against Steiner for an undisclosed sum. [*Id.* ¶¶ 20-23].

On February 18, 2011, Steiner's excess liability insurers, Arch Insurance Co. and Navigators Management (UK) Ltd. ("Insurers") instituted this action against NCL. They seek indemnity and/or contribution for Maintenance and Cure (Count I) and Personal Injury (Count II) damages paid to

Simpson, the underlying personal injury plaintiff, on behalf of their insured, Steiner.[1] The Insurers also seek to recover damages for breach of contract (Count III), averring they are entitled to recover the money they paid to Simpson on behalf of Steiner because NCL's alleged breach of the Concession Agreement with Steiner caused Simpson's alleged injuries. NCL filed an answer to Count I for contribution for Maintenance and Cure [DE 10] and moved to dismiss the remaining Counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted" tests the legal sufficiency of the allegations in the complaint. FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss, the Court accepts the well-pleaded factual allegations as true and construes them in the light most favorable to the Plaintiffs. *Speaker v. U.S. Dept. of Health and Human Serv.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To survive a motion to dismiss, a "complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Regardless of the alleged facts, the Court also may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The pleadings consist primarily of the Complaint and documents attached as exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir.

---

[1]Count IV of the Complaint seeks Equitable Subrogation for these same Maintenance and Cure and Personal Injury damages. [Compl at 8-9]. In their Response, the Insurers agreed to "withdraw their claim for equitable subrogation, as it is potentially duplicative of other counts asserted in their Complaint." [DE 14 at 19].

2009). However, if a document is referred to in the Complaint and is central to the Plaintiffs' claims, then the Court may consider the document part of the pleading for purposes of a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III. DISCUSSION

### A. *Count II – The Insurers Have No Right to Contribution or Indemnity*

In Count II, the Insurers claim they are entitled to contribution and indemnity for the alleged overpayment of personal injury damages to Simpson on behalf of their insured. The Insurers use the terms "indemnity" and "contribution" interchangeably and claim they are entitled to both. Contribution is the "'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'" *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004)). Indemnity, on the other hand, shifts the entire loss from the one who paid it to another who should bear it instead. *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718 (2d Cir. 1978). Indemnity is an all-or-nothing allocation of liability, not based upon comparative fault but upon some special relationship that requires one party to bear the entire burden. It is clear that what the Insurers seek is contribution based on NCL's status as an alleged joint tortfeasor with their insured, Steiner, and in fact, only seek to recover from NCL its proportionate share of Simpson's damages. Accordingly, the Court will analyze whether the Insurers are entitled to contribution from NCL.

In a maritime case, a joint tortfeasor that pays more than its share of liability is entitled to contribution from its fellow joint tortfeasors. The Supreme Court in *McDermott, Inc. v. AmClyde*, 511

U.S. 202 (1994), addressed the question of how a settlement with less than all of the defendants in a maritime case should affect the liability of a non-settling defendant that goes to trial. In *McDermott*, the Court held that liability for the non-settling tortfeasor is determined by using the proportionate share approach. *Id.* at 212.

Under the proportionate share approach, when a plaintiff settles with less than all of the defendants, a non-settling joint tortfeasor's liability is based on a jury's allocation of fault such that the non-settling defendant pays only its proportionate share of the judgment. *Id.* at 212. The Supreme Court's rationale for adopting the proportionate share approach is that it provides for allocation of liability based on relative fault, consistent with the proportionate fault approach of *United States v. Reliable Transfer*, 421 U.S. 397 (1975), while conserving judicial resources and maintaining proper incentives to settle claims. *McDermott*, 511 U.S. at 212. After *McDermott*, then, separate contribution actions are both unnecessary and counter to the decision's underlying rationale of minimizing the drain on resources caused by ancillary litigation. Consequently, the Eleventh Circuit has held that a non-settling tortfeasor may not bring an action for contribution against a tortfeasor who has settled with and been released by the claimant. *Great Lakes Dredge and Dock Co. v. Tanker Robert Watt Miller*, 92 F.3d 1102 (11th Cir. 1996).

The issue here is whether a non-settling defendant is entitled to seek contribution from a settling defendant where liability was not apportioned at trial. The parties agree that the principles established by the Supreme Court in *McDermott* apply, *i.e.*, that an action for contribution against a settling defendants is neither necessary nor permitted because the non-settling defendant pays no more than its share of the judgment. NCL argues that its settlement with Simpson released all of Simpson's claims against it. As such, NCL argues that it is a settling tortfeasor within the purview of *McDermott*

and an action for contribution by the Insurers on behalf of Steiner, a non-settling tortfeasor, against NCL is not permitted.

On the other hand, the Insurers argue that a separate contribution action is necessary because there has never been a judicial determination of the relative degrees of fault between NCL and Steiner. Accordingly, the Insurers believe that the Court should create an exception to the settlement bar rule because "the state court presiding over Simpson's personal injury lawsuit against Steiner and NCL completely disregarded the *McDermott* rule. It did not permit the jury to consider the extent to which NCL's fault contributed to Simpson's injuries." [DE 14 at 2-3]. The Insurers aver that because the jury was not instructed to consider NCL's degree of fault and apportion liability accordingly, they were "cast in judgment" to pay the full measure of Simpson's damages. [*Id.* at 9]. For that reason, the Insurers claim they are entitled to contribution from NCL to recover that portion of damages paid to Simpson that was attributable to NCL's wrongdoing. In effect, the Insurers believe this Court must hold a second trial on the underlying personal injury plaintiff Simpson's claims in order to resolve the Insurers' claim for contribution.

The Court finds persuasive the reasoning of the Fifth Circuit Court of Appeals in *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 835-36 (5th Cir. 1992). *Hardy*, like the matter here, was a maritime action brought by an injured seaman against multiple defendants alleging violations of the Jones Act and general maritime law. There, Hardy settled his claims against all but one defendant and proceeded to trial against that defendant, Bouygues Offshore S.A. ("BOS"). Following a jury verdict in Hardy's favor, the district court did not reduce the damages award to account for Hardy's pre-trial settlements. After entry of judgment and pending appeal, BOS settled with Hardy for an undisclosed sum, and then proceeded to appeal its contribution claim against co-defendant, Zaire Gulf Oil Company ("ZAGOC"),

to recover from ZAGOC what BOS had overpaid to Hardy.

The Fifth Circuit held that a defendant who enters into a post-trial settlement with the plaintiff cannot maintain a claim for contribution against a defendant that settled prior to trial. Such a post-trial settlement eliminates the right to appeal against the plaintiff, and waives the right to complain that the trial court improperly refused to reduce the amount of damages the jury awarded:

> If a liable defendant, like BOS in the instant case, complains that the amount of damages it owes the plaintiff is excessive, it must pursue its complaint against the plaintiff and not the settling defendants. BOS did not do so. It instead entered into a post-trial settlement with plaintiff Hardy and pursued its complaint in a contribution action against ZAGOC.
>
> This Court cannot endorse the procedure that BOS followed. A rule that a liable defendant could enter into a post-trial settlement with the plaintiff and then initiate an action for contribution against the defendants that settled with the plaintiff before trial would, among other things, shatter the traditional finality of settlements. The departure of a plaintiff through settlement would no longer mark the end of a lawsuit. With motions for equalization of damages thinly disguised as actions for contribution, defendants that have suffered an adverse judgment could continue to harass defendants that settled with the plaintiff prior to trial. The dockets of the federal courts, already bloated, would swell further. We must avoid this danger and conclude that BOS's post-trial settlement with Hardy constitutes a waiver of its right of contribution.

*Hardy*, 949 F.2d at 835-36.

The Court is not unsympathetic to the possibility that the Insurers will end up paying an amount greater than Steiner's proportionate share of liability. However, the Insurers have no right of contribution from NCL. Initiating an ancillary proceeding for contribution against a defendant that settled before trial is not permitted. If the Insurers believed they paid more than Steiner's proportionate share of liability, they should have awaited the disposition of the post-trial motions; if the alleged error was not corrected, they should have filed an appeal. They instead entered into a post-trial settlement with plaintiff Simpson and pursued their complaint in a contribution action against NCL.

Any claim by the Insurers for contribution or indemnity pursuant to the proportionate share approach is barred under maritime law. By entering into a pre-trial settlement, Simpson released NCL from any further liability for contribution. *Murphy v. Florida Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1314 (11th Cir. 2003).[2] Consequently, the Insurers have no right to contribution from NCL. Accordingly, the Insurers' claim for contribution must be dismissed with prejudice.

### B. Count III – The Insurers Fail to State a Claim for Breach of Contract

In Count III, the Insurers seek to recover damages under a contract entered into between NCL and their insured, Steiner. NCL moves to dismiss the contract claim arguing that the Insurers have no basis to sue under a contract between NCL and Steiner and also argue that the Insurers misstate the contractual provisions in the contract they allege NCL breached.[3] The elements for a breach of contract claim are (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from that breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). To prove the existence of a contract, the Insurers must establish that there was (1) an offer, (2) acceptance, (3) consideration, and (4) sufficient specification of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The Insurers fail to adequately plead any of the

---

[2] Allowing [the Insurers] to recover contribution from [NCL] in these circumstances is incompatible with the proportionate share approach. An essential tenet of this approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less. It follows that what remains, and all that remains, to be calculated is the compensation the nonsettling tortfeasors owe the plaintiff. Once that amount is determined at trial, the nonsettling tortfeasors are liable only to the plaintiff and only to the extent the trial verdict determines.

[3] In its Reply, NCL indicates that the Insurers' claim for breach of contract also is barred by the applicable statute of limitations. [DE 16 at 9]. In support, NCL notes that Simpson was injured on February 22, 2006. NCL avers it was served on May 12, 2011, which is more than five (5) years after the incident leading to Simpson's injuries. [*Id.*] However, the Complaint in this action was filed on February 18, 2011, which is less than five (5) years after the incident leading to Simpson's injuries.

elements to state a claim for breach of contract. Because these infirmities cannot be cured by amendment, as discussed below, Count III for breach of contract must be dismissed with prejudice.

> 1. *The Insurers fail to allege the existence of a contract or assignment of legal rights under a contract*

The Insurers do not allege the existence of a contract between NCL and the Insurers, but instead, allege that NCL had a contract with Steiner. [Compl. ¶ 41]. In their Response the Insurers assert that they became "subrogated to Steiner's contract rights with respect to NCL," but the Complaint fails to allege this "fact." [DE 14 at 6-7, 19]. Notably, the Insurers have not attached any assignment to this Complaint.[4] Moreover, as NCL notes in its Reply, the Concession Agreement with Steiner is non-assignable without NCL's agreement. [DE 16 at 9 (citing Concession Agreement ¶ 9(H))]. Thus, Insurers needed to plead subrogation to Steiner's rights under the Concession Agreement and attach a valid assignment of the Concession Agreement that includes NCL's agreement to the assignment. Because they failed to do either, they fail to allege the existence of a contract.

> 2. *Under the Concession Agreement Steiner, not NCL, was responsible for maintaining the spa area in a clean, orderly, safe and sanitary condition*

Next, NCL argues that the Insurers misstate the provisions of the contract that NCL allegedly breached.[5] The Insurers allege that NCL breached the Concession Agreement when NCL "failed to clean and maintain the floor." [Compl. ¶ 43]. NCL argues that the plain language of the Concession Agreement "reflects that Steiner, not NCL, was responsible for cleaning and maintenance of the

---

[4]Actually, the Insurers did not attach the contract upon which they are suing to the Complaint. NCL attached the Concession Agreement to its Reply memorandum. [DE 16].

[5]To the extent the Insurers "seek indemnity or contribution from NCL based on breach of contract," [*see* DE 14 at 18] the Concession Agreement provides that Steiner, not NCL, "shall be responsible for and be required to pay, any contribution or indemnity and, any and all maintenance and cure under the general maritime law." [Concession Agreement ¶ 5(B)].

Premises where Simpson allegedly fell." [DE 16 at 9]. Pursuant to the Concession Agreement, NCL was obligated to provide "maintenance services to the [Spa], including but not limited to, emptying and disposing of garbage, and sweeping and polishing floors." [Concession Agreement ¶ 1(D)].[6] However, the Concession Agreement also required Steiner to "maintain the [Spa] Premises, Fixtures and Storage Facilities and all other space utilized by it onboard the Vessels in a clean, orderly, safe and sanitary condition." [*Id.*] Thus, although NCL was required to sweep and polish the floors, Steiner, not NCL, was required to maintain the Spa in a safe condition. Accordingly, the Insurers fail to allege NCL breached actual terms of the Concession Agreement.

---

[6]The sections of the Concession Agreement that NCL is alleged to have breached provide that:
> During the term of the Agreement, CONCESSIONAIRE [Steiner], shall maintain the Premises, Fixtures and Storage Facilities and all other space utilized by it onboard the Vessels in a clean, orderly, safe and sanitary condition satisfactory to NCL, provided that this will not necessitate CONCESSIONAIRE improving the [Spa] Premises and Storage Facilities beyond their condition at the time of the commencement hereof. NCL'S authorized personnel shall have the right to enter upon the [Spa] Premises at any reasonable time for purposes of examining the condition of the space utilized by CONCESSIONAIRE and for inspecting the quality, variety and selection of Spa Merchandise and the Concession Services and efficiency of operations performed by CONCESSIONAIRE onboard each Vessel.
>
> ... [M]aintenance services to the Premises, including but not limited to, emptying and disposing of garbage, and sweeping and polishing floors, during such hours that NCL determines in its discretion. Such services shall be provided by NCL's personnel.
>
> \* \* \*
>
> CONCESSIONAIRE at all times has the absolute right and obligation to control all of the Employees engaged by CONCESSIONAIRE to perform its obligations hereunder, and as such, CONCESSIONAIRE's Employees are solely the employees of CONCESSIONAIRE. For the sole purpose of maintaining discipline and to preserve the health, safety and discipline aboard the Vessels, CONCESSIONAIRE agrees that the Masters and Ships' officers and such NCL personnel as shall be designated by the Masters at all times shall be entitled to exert overall supervision of CONCESSIONAIRE's employees, who shall be under the control and direction, and report directly to whomever the Masters designate on board the Vessels. CONCESSIONAIRE'S personnel are to give prompt obedience to the instructions and orders of the NCL designee in regard to issues of health, safety and discipline aboard the Vessels. However, neither the foregoing provision nor adherence to the Vessel's rules will in any way detract from or modify CONCESSIONAIRE's status as an independent contractor, its "employer-employee relationship" with its employees or its right to otherwise control its employees.

Concession Agreement ¶¶ 1(D), 5(F).

### 3. *Neither the Insurers nor Steiner sustained injuries as a result of NCL's alleged breach of contract*

Finally, the Insurers fail to allege they suffered damages resulting from the alleged contract breach. The Insurers allege that Simpson, not Steiner, "sustained personal injuries when he slipped and fell on a wet floor." [Compl. ¶¶ 11, 43-44 (the "damages [Simpson] claimed for personal injury ... were caused as a result of NCL's breach" of a contractual duty owed to Steiner)]. NCL's liability to Simpson was based upon its status as a shipowner, not a breach of the Concession Agreement, a contract to which Simpson was not a party or third-party beneficiary. [DE 14 at 8]. Steiner's damages flowed from its liability to Simpson based upon the employer-employee relationship, and not NCL's alleged breach of the Concession Agreement.[7] [*Id.* at 9]. Additionally, the Insurers were allegedly damaged because they entered into a post-judgment settlement agreement with Simpson. Thus, the facts alleged belie any claim that the Insurers suffered damages from the alleged contract breach.

### IV. CONCLUSION

For the reasons discussed above, the Insurers cannot maintain a claim for indemnity or contribution against NCL for amounts paid on behalf of Steiner to Simpson in connection with the personal injury settlement. Additionally, the Insurers cannot bring a claim for breach of contract against NCL because no contract existed between the parties and the Complaint fails to set forth facts that would support a claim that NCL breached its contract with Steiner. Finally, the Insurers have withdrawn their claim for equitable subrogation (Count IV). Therefore, it is

---

[7] It also does not appear that the Concession Agreement covers liability for personal injuries sustained by a third-party. For example, NCL's remedy if Steiner failed to "maintain the [Spa] Premises ... in a clean, orderly, safe and sanitary condition" was to perform those services itself and charge Steiner for the services. [Concession Agreement ¶ 1(D)].

ORDERED that

(1) Defendant's Motion to Dismiss Count II, Count III, and Count IV of Plaintiffs' Complaint [DE 11] is GRANTED.

(2) Count II, Count III, and Count IV of Plaintiffs' Complaint are DISMISSED WITH PREJUDICE.

(3) This action shall proceed on Count I of Plaintiffs' Complaint for Indemnity and/or Contribution for Maintenance and Cure Expenses.

(4) Plaintiffs' Request for Oral Argument on Defendant's Motion to Dismiss [DE 15] is DENIED.

DONE AND ORDERED in Miami, Florida, this 19th day of September, 2011.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Simonton
All counsel of record