UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20577-CIV-SEITZ/SIMONTON

ARCH INSURANCE COMPANY and
NAVIGATORS MANAGEMENT (UK)
LTD.,

      Plaintiffs,
v.

NCL (BAHAMAS), LTD. d/b/a
NORWEGIAN CRUISE LINE,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Defendant's Amended Motion for Summary Judgment [DE 65]. Plaintiffs, who are the excess liability insurers for a concessionaire that provides spa services on NCL cruise ships, seek contribution and/or indemnity from NCL for maintenance and cure paid to the concessionaire's employee for injuries he sustained while working on an NCL ship. Upon review of the Defendant's Motion [DE 65], Plaintiff's Response [DE 74], Defendant's Reply [DE 75], and the record, the Court will grant NCL's Motion for Summary Judgment because the agreement that governs the relationship between the concessionaire and NCL contains a provision that bars Plaintiffs from seeking contribution and/or indemnity from NCL for maintenance and cure paid to the concessionaire's employee. As such, the Court will not reach NCL's alternative ground for summary judgment that Plaintiffs are barred from seeking contribution from NCL because the concessionaire, in settling the maintenance and cure claims against it in the underlying state court action, did not extinguish NCL's liability as the alleged joint tortfeasor.

1

**I. BACKGROUND**

Steiner Trans-Ocean, Ltd. ("Steiner"), Plaintiffs' insured, operated a spa aboard Defendant NCL's cruise ship, the *Norwegian Crown*. On February 22, 2006, Danny Simpson, a fitness instructor employed by Steiner, sustained personal injuries when he slipped and fell on a wet floor on the *Norwegian Crown*. It is unclear from the record whether the area in which Simpson fell was part of the spa [DE 1 at ¶ 11] or was a "common area" of the ship [DE 74 at 2, ¶ 7].

At the time of Simpson's accident, the relationship between Steiner and NCL, including the parties' obligations to Steiner's employees, was governed by the Amended and Restated Concession Agreement ("Concession Agreement") [DE 65-1].[1] The Concession Agreement provides that Steiner must maintain the space it uses in a clean, orderly, and sanitary condition. [DE 65-1 at 3]. However, the Agreement also provides that NCL is responsible for sweeping and polishing the floors. [*Id.*].

After his accident, Simpson sued Steiner and NCL in Florida state court to recover for the injuries he suffered. [DE 74-2]. As against Steiner, Simpson asserted claims for Jones Act negligence, unseaworthiness, and maintenance and cure. With respect to NCL, Simpson asserted a claim for unseaworthiness. Prior to trial, Steiner settled the maintenance and cure claims against it. [DE 65-2]. Less than three months after Steiner settled, and before the trial began, NCL reached its own settlement agreement and received a general release from Simpson [DE 65-3].

Subsequently, the case proceeded to a jury trial on Simpson's remaining, unsettled claims for Jones Act negligence and unseaworthiness against Steiner. The trial judge presiding over the case

---

[1]The Concession Agreement is between NCL and Mandara Spa (Cruise II) [DE 65-1 at 1]. According to an affidavit by Robert Boehm, Executive Vice President, General Counsel, and Secretary of Steiner Leisure Limited, Mandara and Steiner Trans-Ocean, Ltd. are indirect, wholly-owned subsidiaries of Steiner Leisure Limited. [DE 74-3].

2

ruled that NCL could not be listed on the verdict form with Steiner. [DE 74-9 at 22]. The jury then returned a verdict finding that Steiner alone was negligent and awarded Simpson $9,486,000 in damages. [DE 65-4]. While post-trial motions were pending, Simpson, Steiner, and Steiner's insurers, including the Plaintiffs, participated in a mediation. [DE 1 at ¶¶ 21, 23]. Instead of waiting for an adjudication of the post-trial motions and then, if necessary, appealing the jury verdict, Steiner settled with Simpson for an undisclosed sum. [*Id.*].

Thereafter, Plaintiffs came to this Court and sued NCL for indemnity and/or contribution for Maintenance and Cure (Count I) and Personal Injury (Count II) for damages paid to Simpson on behalf of Steiner. [DE 1]. Plaintiffs also asserted a breach of contract claim (Count III) on the ground that NCL's alleged breach of the Concession Agreement caused Simpson's injuries. [*Id.*]. Lastly, Plaintiffs sought equitable subrogation for the maintenance and cure and personal injury damages (Count IV), but subsequently withdrew this claim as duplicative of others. [*Id.*; DE 14 at 19]. NCL moved to dismiss all claims, except for Count I. [DE 11]. The Court granted NCL's motion with prejudice [DE 20]. Currently pending before the Court is NCL's Amended Motion for Summary Judgment as to the sole remaining claim for contribution and/or indemnity for Maintenance and Cure (Count I). [DE 65].

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party

demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

### B. Analysis

NCL seeks summary judgment on two alternative grounds. First, it asserts that under both Florida law and federal law, the Concession Agreement between the parties precludes Plaintiffs from seeking contribution and/or indemnity for maintenance and cure paid to Simpson. NCL maintains, in the alternative, that Plaintiffs are barred from seeking contribution from NCL because Steiner, in settling the maintenance and cure claims against it in the underlying state court case, did not extinguish NCL's liability as the alleged joint tortfeasor. Because the Court finds that a provision in the Concession Agreement bars Plaintiffs from recovering contribution and/or indemnity for maintenance and cure paid to Simpson, the Court will grant summary judgment in favor of NCL and will not reach NCL's alternative ground for summary judgment.

#### 1. Choice of Law

The initial inquiry in this case is whether Florida law or federal maritime law governs Plaintiffs' claim for contribution and/or indemnity for maintenance and cure. Typically, when the Court sits in admiralty jurisdiction, federal maritime conflict of laws principles control. *Cooper v.*

4

*Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161-62 (11th Cir. 2009).[2] In 2004, the Supreme Court held that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004). Whether a contract is maritime in nature depends on "the nature of the contract, as to whether it has reference to maritime services or maritime transactions." *Id.* at 24.

Here, the Concession Agreement is maritime in nature because it is a contract for the provision of spa services on NCL's ships. The services contracted for are in no way related to land; they are to be performed exclusively on the ships and at sea. Thus, the Concession Agreement is a maritime contract. However, federal maritime law does not apply. This is because the Concession Agreement contains a choice of law provision specifying that it is governed by and should be interpreted under Florida law. [DE 65-1 at 20]. "[T]he general rule in federal courts is that such a provision will be applied unless the state in question has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law." *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F.Supp.2d 1244, 1251 (S.D. Fla. 2010) (collecting cases)).

Plaintiffs do not contend that Florida lacks a substantial relationship to the parties. Moreover, while both parties to the Concession Agreement are foreign corporations, they have offices in Florida. NCL's principal place of business is in Miami, Florida and Mandera Spa, who is Plaintiffs' insured's subsidiary and a signatory to the Concession Agreement, has offices in Coral

---

[2] Here, Plaintiffs have invoked both the Court's admiralty jurisdiction and its diversity jurisdiction. [DE 1 at ¶¶ 4,5]. However, regardless of how Plaintiff pleads jurisdiction, it is the nature of the contract at issue that determines whether the Court sits in admiralty jurisdiction, and, as such, whether maritime law, as opposed to state law, governs. Where a contract is maritime in nature, maritime law governs the dispute. Otherwise, state law controls. *Misener Marine Construction, Inc. v. Norfolk Dredging Co.*, 2008 U.S. Dist. LEXIS 95321, at *6-*8 (S.D. Ga. November 24, 2008).

Gables, Florida. [DE 65-1 at 1]. The Concession Agreement also provides that any notices, demands, or other communication given in connection with the Agreement must be sent to NCL's Miami office and Mandara Spa's Coral Gables office. [*Id.* at 19]. Further, the Court finds it reasonable to apply Florida law because the underlying litigation involving Simpson, NCL, and Steiner, out of which the instant case arose, occurred in Florida state court. *See Cooper*, 575 F.3d at 1166 (where Dutch choice of law provision could not apply due to the parties failure to provide the Court with relevant Dutch law, Florida law applied because Florida was the original forum of the litigation, Florida had some factual connection to the litigation, and no other jurisdiction had stronger ties). Finally, the parties have not identified a conflict between Florida law and the fundamental purpose of maritime law. Thus, the Court will apply Florida law to Plaintiffs' claim for maintenance and cure.[3]

### 2. Effect of the Concession Agreement on Plaintiffs' Claim for Contribution/Indemnity for Maintenance and Cure

NCL asserts that a provision in the Concession Agreement precludes Plaintiffs from recovering contribution and/or indemnity for maintenance and cure paid to Simpson. Paragraph 5(B) of the Concession Agreement, [DE 65-1 at 8], provides that:

> CONCESSIONAIRE hereby represents to NCL that it will, pursuant to United States General Maritime Law, be responsible to its Employees and shall be deemed the exclusive employer hereunder for all obligations or liabilities, including but not limited to those arising from Jones Act negligence claims and the doctrine of Maintenance and Cure, said doctrine generally requiring the payment of medical expenses incurred because of instances of accident or illness to its Employees on board the Vessels. CONCESSIONAIRE shall be responsible for and be required to pay, any contribution or indemnity and, any and all

---

[3]However, it appears to the Court that there is little, if any, difference between Florida law and federal maritime law with respect to the interpretation of exculpatory and indemnity provisions. Both bodies of law require that the parties' intent be expressed in clear and unequivocal terms in order to disclaim and/or limit liability. *See e.g. Cooper*, 575 F.3d at 1166-67 (applying Florida law); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986) (applying federal maritime law).

6

maintenance and cure under the general maritime law. For the avoidance of doubt and except as otherwise provided in Paragraph (L) in this section,[4] CONCESSIONAIRE hereby assumes all liability for payment of medical expenses incurred because of accident or illness to its Employees on board or while on shore or otherwise while such Employee is in the service of the Vessels, and agrees to reimburse NCL for any payments advanced by it for such expenses. NCL shall have no obligation to advance, or liability for, payment of medical expenses relating to the Employees of CONCESSIONAIRE.

In Florida, "exculpatory provisions which attempt to relieve a party of his or her own negligence are generally looked upon with disfavor." *Sunny Isles Marina, Inc. v. Adulami*, 706 So.2d 920, 922 (Fla. 3rd DCA 1998) (citations omitted). "Such provisions, however, have been found to be valid and enforceable by Florida courts where the intention is made clear and unequivocal." *Cooper*, 575 F.3d at 1166-67. Specifically, in order to be enforced, the wording of the exculpatory provision "must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away." *Id.* at 1167; *see Zieger Crane Rentals, Inc. v. Double A Industries, Inc.*, 16 So.3d 907, 914 (Fla. 4th DCA 2009) (holding indemnity clause enforceable because its terms clearly and unequivocally provided that the general contractor intended to indemnify a crane lessor against the lessor's own negligence); *Cain v. Banka*, 932 So.2d 575, 579 (Fla. 5th DCA 2006) (holding that an exculpatory clause that absolved the defendant of "any and all liability, claims, demands, and causes of action whatsoever" included the plaintiff's negligence action)).

In the instant case, the provision at issue is sufficiently clear and unambiguous such that an

---

[4] Paragraph (L) of the Concession Agreement, [DE 65-1 at 10], which is not relevant to the issues presented herein, provides that
> NCL may in its sole discretion maintain a qualified medical doctor on board each Vessel while the Vessel is at sea, and such doctor will be available to render medical attention to Employees of CONCESSIONAIRE to the same extent available to NCL's crewmembers. NCL shall provide, at no charge to the Concessionaire, the use of its shipboard medical facilities for use by the Employees. All costs or expenses incurred by NCL relating to medical services or attention rendered to CONCESSIONAIRE'S employees while off the Vessel shall be charged to the account of CONCESSIONAIRE. Nothing in this Paragraph shall be deemed a limitation or waiver of the parties respective rights and obligations set forth in Paragraph 5(C) above or otherwise herein.

Paragraph 5(C) is also not relevant to the issues in this case.

ordinary and knowledge person would know that he or she is contracting away contribution/ indemnity claims for maintenance and cure[5] against NCL with respect to Steiner's employees. The provision expressly provides that Steiner "shall be responsible for and be required to pay, any contribution or indemnity and, *any and all maintenance and cure under the general maritime law.*" (emphasis added). The provision goes on to state that Steiner "*assumes all liability* for payment of medical expenses incurred because of accident or illness to its Employees on board or while on shore or otherwise while such Employee is in the service of the Vessels, and agrees to reimburse NCL for any payments advanced by it for such expenses. NCL shall have *no obligation to advance, or liability for*, payment of medical expenses related to the Employees of [Steiner]." (emphasis added). The provision disclaims liability not only in a situation where a Steiner employee sues NCL for maintenance and cure, as Plaintiffs argue [DE 74 at 8-9], but also where Steiner or Plaintiffs, as Steiner's subrogrees, seek contribution and/or indemnity for maintenance and cure paid to a Steiner employee. In particular, the plain language of the portions that provide that Plaintiffs' insured "assumes all liability" and has "no . . . liability for" the medical expenses of Steiner's employees and that Steiner is responsible for and is required to pay "any and all maintenance and cure" clearly and unequivocally bar Plaintiffs' claim herein for contribution and/or indemnity for maintenance and cure.[6]

---

[5] Maintenance and cure is defined as food, medical care, and lodging. *See Great Lakes Dredge and Dock Co. v. Tanker Robert Watt Miller*, 92 F.3d 1102, 1107 (11th Cir. 1996).

[6] Plaintiffs maintain that it would be illogical to interpret the portion of the provision that requires Steiner to pay contribution and indemnity as requiring Steiner to make those payments to itself. [DE 74 at 9]. The Court agrees, but such an interpretation is neither compelled by the language of the provision nor does it render the provision ambiguous. This part of the provision should be interpreted, consistent with the rest of the clause, as an acknowledgment by Steiner that if NCL is found liable to a Steiner employee for maintenance and cure and makes those payments, Steiner must pay NCL contribution or indemnity for the maintenance and cure, including medical expenses, that NCL paid to the Steiner employee.

The Court finds the Eleventh Circuit's opinion in *Cooper*, 575 F.3d 1151, instructive. In that case, a ship captain sued the shipowner as well as his maritime employer, another company that managed the ship and its crew, and the ship, *in rem*, to recover damages for injuries he suffered aboard the ship. The defendants then filed a third-party complaint against the shipbuilder, the ship designer, and the designer's American affiliate for negligence and strict liability in connection with the captain's injuries. The defendants settled with the captain and then sought recovery in the form of indemnity, contribution, and equitable subrogation from the shipbuilder, the ship designer, and the designer's American affiliate for the money the defendants paid to the captain in settlements.

The shipowner argued that a limitation of liability provision in its contract with the shipbuilder did not apply to its claims against the shipbuilder for contribution/indemnity/equitable subrogation for the damages that the shipowner paid to the captain injured on the ship. The provision at issue stated that "[T]he Builder shall have no liability whatsoever for any loss or damage directly arising from the defectiveness or deficiency of parts . . . except if resulting from intentional conduct or gross negligence of the Builder or his servants. Liability of the Builder for loss of business, loss of profits, consequential damages or other (indirect) damages, however, is always excluded . . ." *Id.* at 1159. The shipowner maintained that the lack of any specific language in the provision limiting the liability of the shipbuilder for its negligence (or strict liability) in causing personal injury to a third party (i.e. the captain) rendered the clause unenforceable. *Id.* at 1167. The Eleventh Circuit rejected the argument holding that the provision was sufficiently clear and unequivocal and, therefore, barred the shipowner's contribution, indemnity, and equitable subrogation claims against the shipbuilder for the damages the shipowner paid to the captain. *Id.* at 1168.

It is noteworthy that even though the provision at issue in *Cooper*, like the one in the instant case, does not expressly bar contribution or indemnity claims, the Eleventh Circuit found it sufficiently clear to encompass those claims. Thus, in line with *Cooper*, the provision in the instant case is also clear and unambiguous as it unequivocally states that Steiner is responsible for all maintenance and cure for its employees and that NCL has no liability for the payment of medical expenses to Steiner's employees. The provision need not reference contribution or indemnity because the intent that NCL not be held liable for maintenance and cure and the medical expenses is expressly stated, and, as such, necessarily includes contribution and indemnity claims for the same.[7]

Plaintiffs' reliance on *Natco Limited Partnership v. Moran Towing of Florida, Inc.*, 267 F.3d 1190 (11th Cir. 2001) and *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684 (5th Cir. 1970)[8] is misplaced. While these cases stand for the general proposition that the intent to indemnify must be expressed in plain, clear, and unequivocal terms [DE 74 at 12], they do not support Plaintiffs' contention that the provision at issue is ambiguous. In *Natco Limited Partnership*, the Eleventh Circuit noted that the indemnification clause in a towage contract did not fulfill the standard set forth in *Brown v. Seaboard Coast Line Railroad Co.*, 554 F.2d 1299 (5th Cir. 1977), namely that the right of indemnity must be expressed in clear and unequivocal language. However, the Court affirmed the district court's finding that attorney's fees could be recovered under the indemnification clause because the kinds of damages covered by an indemnity agreement, as

---

[7]Because the Court finds the provision clear and unambiguous, it will not consider the parol evidence provided by Plaintiffs, [DE 74-3], to determine the intent of the parties.

[8]The Eleventh Circuit has adopted, as binding precedent, decisions of the Fifth Circuit handed down prior to October 1, 1981. *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

10

opposed to the right to indemnity, can be expressed in general, broad terms. The provision in the Concession Agreement is different from the one in *Natco Limited Partnership* because it clearly and unequivocally states that Steiner assumes all liability for maintenance and cure and medical expenses for Steiner's employees.

*Transcontinental Gas Pipe Line Corp.* is also distinguishable from the instant case because the indemnity provision there, by its terms, sought to indemnify a lease operator for losses caused by the negligence or willful misconduct of the barge owner, not to indemnify the lease operator for its own negligence. As such, the Court held that the lease operator was not entitled to indemnity under the contract. *Id.* at 693. However, in the instant case the provision at issue is clear and unequivocal and, as such, bars Plaintiffs' claims against NCL for contribution and/or indemnity for maintenance and cure paid to Simpson.

III. CONCLUSION

For the reasons stated above, the Court will grant summary judgment in favor of NCL. Accordingly, it is

ORDERED THAT

(1) Plaintiff's Amended Motion for Summary Judgment [DE 65] is GRANTED.

(2) The Court will concurrently enter a final judgment.

(3) This case is CLOSED.

DONE and ORDERED in Miami, Florida on this 15th of October, 2012

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Honorable Andrea M. Simonton
Counsel of Record